UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:16-cr-00012-DBH |
| | ) | |
| NAQUAN ELEY, | ) | |
| | ) | |
| *Defendant* | ) | |

### MEMORANDUM DECISION AND ORDER ON MOTION TO PERMIT PRIVATELY RETAINED CO-COUNSEL

The defendant, who has been indicted on a charge of conspiracy to distribute cocaine base and heroin in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B), *see* Indictment (ECF No. 3), moved for leave to permit Lawrence Schoenbach, Esq., an attorney provisionally retained by his girlfriend and grandmother, to serve in a limited capacity as co-counsel with his court-appointed attorney, William Maselli, Esq. *See* Letter dated August 23, 2017, from William Maselli to Christa Berry, Clerk of Court[] ("Motion") (ECF No. 86). The government opposed the Motion, arguing that the defendant must either choose to continue at trial with his court-appointed attorney or utilize the services of Attorney Schoenbach alone. *See* Government's Response to Defendant's Motion for Leave To Appear ("Response") (ECF No. 88) at 1-2. After conducting a hearing, and with the benefit of post-hearing briefs, I found that the retention of private counsel for less than full representation by third parties, who have been shown to have used their own funds, does not require the defendant to forfeit his right to court-appointed counsel, and I granted the Motion. *See* ECF No. 102. I now supplement my earlier docket endorsement with this memorandum decision.

## I. Factual Background

At the defendant's initial appearance, I was provided with his signed and sworn Financial Declaration (ECF No. 15). He stated, *inter alia*, that he was not married, had one dependent, had no assets other than $200 in a checking account, had no current employment, and had last been employed four months earlier, earning $2,500 a month. *See id.* I approved the Financial Declaration and appointed an attorney from the District's Criminal Justice Act ("CJA") panel to represent the defendant on June 13, 2016.[1] *See* ECF Nos. 16, 17. The defendant pleaded not guilty, and the case was set for trial. *See* ECF No. 18.

The instant motion was filed two months before trial was set to commence. *See* ECF Nos. 84, 86. The government filed a response, to which the defendant replied. *See* ECF Nos. 88, 89. On September 13, 2017, I held a hearing on the motion and ordered further briefing on the issues raised therein. *See* ECF No. 91. Both parties filed simultaneous post-hearing briefs, *see* Supplemental Memorandum of Law in Support of Naquan Eley's Motion To Permit Privately Retained Counsel To Join CJA Counsel in the Representation of the Case ("Defendant's Suppl. Memorandum") (ECF No. 93); Government's Supplemental Memorandum ("Government's Suppl. Memorandum") (ECF No. 94), and responses, *see* Government's Response to Defendant's Supplemental Memorandum ("Government's Response") (ECF No. 95); [Defendant's] Reply re: Motion for Leave To Appear (ECF No. 97). In order to provide as much notice as possible to the parties, I granted the Motion by "text-only" docket endorsement on September 28, 2017, ECF No. 102, to allow Attorney Schoenbach to participate with Attorney Maselli at a pre-jury selection conference on September 29, ECF No. 104, and jury selection on October 2, ECF No. 106.

---

[1] The first attorney assigned to represent the defendant moved to withdraw from the case. *See* ECF No. 56. That motion was granted, and Attorney Maselli was appointed on February 28, 2017. *See* ECF No. 67.

## II. Applicable Legal Standard

The determination of eligibility for representation under the CJA "is a judicial function to be performed by the Court after making appropriate inquiries concerning the person's financial eligibility." Plan for the Adequate Representation of Defendants Pursuant to the Criminal Justice Act of 1964 (D. Me., amended July 2017) ("Local CJA") § 4.2.1.2. In determining financial eligibility, the court should consider "the cost of providing the person and his or her dependents with the necessities of life, the cost of securing pretrial release, asset encumbrance, and the likely cost of retained counsel." *Id*. § 4.2.1.4. The initial determination of eligibility for assigned counsel "must be made without regard to the financial ability of the person's family to retain counsel unless the family indicates willingness and ability to do so promptly." *Id*. § 4.2.1.5. "Any doubts about a person's eligibility should be resolved in the person's favor; erroneous determinations of eligibility may be corrected at a later time." *See id.* § 4.2.1.6.

When considering the family resources of a defendant, "[a]t or following the appointment of counsel, the judicial officer may inquire into the financial situation of the person's spouse (or parents, if the person is a juvenile) and if such spouse or parents indicate their willingness to pay all or part of the costs of counsel, the judicial officer may direct deposit or reimbursement." Guide to Judiciary Policy, vol. 7, pt. A, ch. 2 ("Judiciary Policy") § 210.40.50.

## III. Discussion

At the September 13, 2017, hearing, Attorney Schoenbach stated that he had been hired by the defendant's grandmother and girlfriend to meet with and advise the defendant when he was originally arrested in New York. More recently, he was provisionally retained by them for the limited purpose of providing joint representation with Attorney Maselli to the defendant. He confirmed that the grandmother and girlfriend's limited funds prevented him from being retained

to serve as sole counsel. He explained that the grandmother and girlfriend had agreed to provide one-third of his usual fee for retained clients for a trial of a similar nature, together with his travel and lodging expenses.[2] He asserted that he could not undertake the task of representing the defendant alone, for the fee agreed to by the defendant's grandmother and girlfriend. At hearing, the defendant expressed a desire for the proposed joint representation.

The government raised two principal arguments in support of its bid for denial of the defendant's motion. First, it contended that the defendant's grandmother and girlfriend, even if considered third parties, have indicated a willingness to promptly pay for his counsel, and, therefore, the defendant should not be entitled to two attorneys, one paid for at taxpayer expense. Second, it argued that the defendant has not made the necessary showing to assure the court that he is not the source of the funds being paid to Attorney Schoenbach.

### A. Impact of Family Funds

At hearing, the government conceded that, although the defendant's grandmother and girlfriend may be "family" in the common usage of the term, they are third parties pursuant to the Judiciary Policy because they are not the defendant's spouse (or parents, were he a juvenile). *See* Judiciary Policy § 210.40.50. This is a commonsense scope of restriction, as a defendant presumably has access to, and control of, only his/her funds and those he/she may share with a spouse. That other family members *may* have financial resources is of no moment, as they have no legal obligation to provide counsel to the defendant, and the defendant has no ability to direct how they dispense their funds. Further, the Local CJA commands that a judge specifically *not* consider the financial ability of a defendant's family to retain counsel when considering an

---

[2] Attorney Schoenbach noted that he had agreed to cap his expenses at $5,000, absent extraordinary circumstances.

application for court-appointed counsel, "unless the family indicates willingness and ability to do so promptly." Local CJA § 4.2.1.5.

Nevertheless, the government argued that the family members here, even if third parties, have indicated a willingness and ability to provide the cost of counsel through their retention of Attorney Schoenbach. *See* Response at 1. It pointed to 18 U.S.C. § 3006A(f), which states, in relevant part:

> Whenever the United States magistrate judge or the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the appointed attorney . . . or to the court for deposit in the Treasury as a reimbursement to the appropriation[.]

18 U.S.C. § 3006A(f). Accordingly, it argued, "[t]he Court should either direct that the newly available funds be used to repay prior CJA expenses or be used for the defendant to proceed with retained counsel only." Response at 1-2. It asserted, "The [CJA] is not designed for an indigent defendant to have both appointed and retained counsel." *Id*. at 2 (footnote omitted). The government pointed to no rule or authority barring a defendant represented by appointed counsel from having the assistance of private counsel in appropriate circumstances.

Contrary to the government's contention, the defendant has not petitioned the court for both appointed and retained counsel. Rather, he seeks the partial representation that Attorney Schoenbach has agreed to provide at his reduced rate as co-counsel to Attorney Maselli. Attorney Schoenbach's statements during the hearing, made as an officer of the court, made clear that he could not represent the defendant as a solo attorney at the rate paid by the defendant's grandmother and girlfriend. The defendant, then, would either be represented by Attorney Maselli, or Attorneys Maselli and Schoenbach as co-counsel, but not by Attorney Schoenbach alone. Even assuming *arguendo* that the defendant's grandmother and girlfriend constituted "family" under the relevant local and federal regulations and policies, Attorney Schoenbach made clear that they have not

5

demonstrated a willingness and ability to provide the defendant with adequate assistance of counsel. Rather, they have demonstrated a willingness and ability to hire Attorney Schoenbach in a limited capacity, one he has represented he can only carry out with the assistance of co-counsel.

The remaining question is whether I must direct the defendant's grandmother and girlfriend to redirect the funds they have agreed to pay Attorney Schoenbach to reimburse the United States Treasury instead. The government has provided no caselaw or statutory authority for the proposition that I must direct third parties who have no financial obligation to or for the defendant, and whose assets the defendant has no right to control, to pay for the defendant's constitutionally-guaranteed right to counsel, either directly or through reimbursement. Accordingly, I declined to do so. I found, instead, that because the defendant has demonstrated that the third parties in this case, his girlfriend and grandmother, cannot afford to pay Attorney Schoenbach to provide the defendant's sole representation, Attorney Schoenbach's appearance as retained co-counsel with the defendant's court-appointed attorney is appropriate in these circumstances.

My research reveals no binding precedent from this circuit on this issue, and there is only a limited body of caselaw to provide guidance from other circuits. Most factually apposite is *United States v. Zelenka*, 112 F. Supp.2d 708 (M.D. Tenn. 1999). There, the court considered whether the defendant remained entitled to CJA counsel when a group of his friends retained a private attorney to serve as his appointed attorney's co-counsel. *See Zelenka*, 112 F. Supp.2d at 710. The court found that the interests of justice would not be served by removing the defendant's appointed attorney, noting that the defendant had no access or control to the third-party funds, that the third parties could at any time decline to continue to pay the retained attorney, which would effectively leave the defendant without counsel, and that the third parties did not agree to pay the retained attorney the full fee to represent the defendant in a solo capacity, but, as in the instant

6

matter, only to the extent that the private attorney served as co-counsel. *See id.* at 717. The court reasoned:

> Simply because private counsel is assisting a federal defender in representing an indigent defendant, does not mean that public funds are being misspent. On the contrary, privately retained counsel can relieve the public defender of both time and money that he might have to spend if he had the sole responsibility of the defense.

*Id*. (citation and internal quotation marks omitted).

The government has countered with two cases in which courts considering a defendant's right to retain appointed counsel when third parties had retained an attorney declined to follow the holding of *Zelenka*. In *United States v. Mumphrey*, No. 1:08cr00024-11, 2008 WL 2596583 (W.D. Va. June 25, 2008), two attorneys retained by third parties sought to serve as co-counsel with the defendant's CJA attorney. *Mumphrey*, 2008 WL 2596583, at *1. The court stated that it was "not persuaded that either the Sixth Amendment or 18 U.S.C. § 3006A requires this court to provide appointed counsel for a defendant who has counsel to represent him[,]" even where the retained counsel was provided by the funds of third parties. *Id.* at *2. In *United States v. Bennett*, No. 3:07-CR-81, 2008 WL 356529 (E.D. Tenn. Jan. 30, 2008), the court ruled that a defendant was no longer eligible for court-appointed counsel when his family retained private counsel on his behalf and he expressed a desire to proceed with retained counsel as co-counsel to his CJA attorney. *See id.* at *1-*4. In view of the court's ruling, the defendant elected to proceed solely with retained counsel, following which he filed a motion for reconsideration predicated on *Zelenka*. *See id*. at *1-*2. The court denied that motion. *See id*. at *4.

*Mumphrey* is distinguishable from both the instant matter and *Zelenka* because the two attorneys retained by the third parties stated that they could represent the defendant without the assistance of the court-appointed attorney, although they and the defendant expressed a preference for him to remain in the case. *See Mumphrey*, 2008 WL 2596583 at *1. In *Bennett*, following the

7

court's initial ruling forcing a choice between retained and appointed counsel, the defendant's family chose to retain counsel to represent the defendant, evidently paying him a sufficient retainer to do so. *See Bennett*, 2008 WL 356529, at *1, *4. Further, the defendant in *Bennett* expressed his desire to go forward with the representation of the retained attorney alone. *See id*. Here, in contrast, the defendant's grandmother and girlfriend have indicated an ability to provide Attorney Schoenbach with only enough money to retain his services as co-counsel with Attorney Maselli, and the defendant has expressly stated his desire for such an arrangement.

Simply put, the defendant's resources, and those of his girlfriend and grandmother, do not provide a choice between retained counsel and court-appointed counsel, but rather the choice between court-appointed counsel alone, and court-appointed counsel assisted by retained counsel. These facts materially distinguish this case from *Mumphrey* and *Bennett*. To the extent that factual overlaps remain, none of these three cases is binding precedent, and I find the reasoning and holding of Judge John Nixon in *Zelenka* more persuasive.

If the third parties here were capable of paying the $75,000 fee to retain Attorney Schoenbach as a solo attorney, my analysis would likely be different. The defendant would not be entitled to two full-time attorneys. The third parties would be free to retain an attorney of their choosing and, with the acquiescence of the defendant, that attorney would be allowed to represent the defendant, and court-appointed counsel would be relieved.

The government argued that "[a]llowing this defendant to have CJA counsel and retained counsel will establish a new precedent within this district that has the potential to jeopardize limited public funds." Government's Suppl. Memorandum at 2. But, the premise of the government's concern is illogical: it presumes that a defendant with the financial means to hire full-time counsel would opt instead to mount his or her defense with limited-representation co-

8

counsel. In any event, on this record, I discern no attempt on the part of this defendant to "game the system" or to obtain the benefit of counsel to which he is not otherwise entitled. He seeks to maximize his opportunities for success at trial with the less-than-wholly-sufficient assets available by seeking co-representation, and the government has cited no persuasive authority that, on these facts, he should not be permitted the relief he requests. To the extent that another defendant raises this issue in the future, it will be dealt with as this motion has been – on a case-by-case basis with a careful application of the facts presented to the relevant law.

### B. Source of Family Funds

At hearing, Attorney Schoenbach explained to the court that he had had tendered to him $11,000 to date by the defendant's grandmother and girlfriend, in the form of two $5,500 cashier's checks provided by the defendant's girlfriend. He stated that he had no reason to think that the funds were illegitimate, secreted from the defendant through the third parties, or anything other than the fruits of the third parties' own assets.

Post-hearing, Attorney Schoenbach provided to the court signed and sworn affidavits from the defendant's girlfriend, Stefanie McDonald, and the defendant's grandmother, Audrey Footmon. *See* Affidavit in Support of Motion for Leave To Appear as Counsel ("Footmon Aff.") (ECF No. 93-1) & Affidavit in Support of Motion for Leave To Appear as Counsel ("McDonald Aff.") (ECF No. 93-2), attached to Defendant's Suppl. Memorandum. Both attest that they have worked together to retain Attorney Schoenbach under the terms explained above. *See id.* Ms. McDonald states that she is employed at SAG AFTRA, earning approximately $45,000 per year, and that the money she has paid, and will pay, Attorney Schoenbach is hers. *See* McDonald Aff. ¶¶ 6-8. Ms. Footmon states that she has provided Ms. McDonald with $9,000 and expects to

provide an additional $3,500 but cannot afford to pay more than that toward the defendant's legal fees. *See* Footmon Aff. ¶¶ 7-9.

Despite these representations by both Attorney Schoenbach at hearing and by Ms. McDonald and Ms. Footmon in their affidavits, the government continued to question the sufficiency of the showing that Attorney Schoenbach's funds are third-party funds. *See* Government's Suppl. Memorandum at 2; Government's Response at 1. The government expressed concern that Attorney Schoenbach's retainer had been tendered by cashier's checks, arguing that further documentation is required to ensure that the funds were in fact derived from Ms. McDonald and Ms. Footmon's savings. *See* Government's Response at 1.

"[A] defendant's claim of indigency certainly should be rejected when he puts his own assets into his relatives' names and those assets remain at his disposal." *United States v. Rubinson*, 543 F.2d 954, 964 (2d. Cir. 1976). However, on the showing made, I am satisfied that is not the case here.

The use of cashier's checks, standing alone, raises no particular cause for concern. A cashier's check, unlike a personal check, assures the payee that funds are actually available. It is a reasonable method of payment to retain the services of an attorney. More importantly, both Ms. McDonald and Ms. Footmon have sworn under oath that the funds to retain Attorney Schoenbach are theirs. *See* McDonald Aff., ¶ 6; Footmon Aff., ¶ 7. Something more than conjecture is required to counter the assertions of these signed affidavits, but nothing more than that has been provided here. On this record, there has been no showing that the defendant was the source of the funds provided to Attorney Schoenbach by his girlfriend and grandmother.

### IV. Conclusion

For the foregoing reasons, the defendant's motion was **GRANTED**.

## *NOTICE*

*In accordance with Federal Rule of Criminal Procedure 59(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 8th day of October, 2017.

    /s/ John H. Rich III
John H. Rich III
United States Magistrate Judge